310 P.2d 508

**Matter of W. A. MOEUR, a Member of the State Bar of Arizona.**

No. 6374.

Supreme Court of Arizona.

April 30, 1957.

W. A. Moeur, Phoenix, in pro. per.

Walter Linton and Roland R. Kruse, Phoenix, for the State Bar of Arizona.

PER CURIAM.

On November 28, 1956, the Board of Governors of the State Bar of Arizona transmitted to this court its findings and recommendations on investigations theretofore held, concerning the professional conduct of respondent, W. A. Moeur, a member of the State Bar of Arizona. At the request of respondent he was heard in this court on April 10, 1957.

On April 27, 1954, a written complaint by way of a letter, signed by Mr. and Mrs. Dan T. Darnell, was filed with the local administrative committee of the State Bar of Arizona for District No. 4, charging respondent with misconduct in violation of his duties as an attorney to his clients.

The committee appointed two examiners to investigate into the complaint. After a lapse of eight months the examiners lodged with the committee specific charges of misconduct. The committee promptly (January, 1955) held hearings and examined witnesses, including respondent. One year and nine months later (September, 1956) it made its findings and transmitted them to the Board of Governors. The findings were to the effect that: (1) the "charges of misconduct" were true, (2) the attorney-client relationship existed, and that the Darnells had a right to and did rely on respondent as their attorney in the matter out of which the charges arose, (3) respondent was guilty of violation of Canon 21 of the Canons of Professional Ethics, and (4) none of the wrongful conduct of respondent resulted or was by him intended to result in any personal gain or advantage to him. The recommendation accompanying the findings was that the respondent be "severely reprimanded". Respondent was notified of the findings and recommendations, and given an opportunity

to appear before the Board of Governors. He did not avail himself of this opportunity. On November 17, 1956, the Board of Governors approved the findings and recommendations of the local committee except for the word "severely" in the recommendation, and in lieu thereof recommended to this court that the respondent be merely "reprimanded".

The evidence amply supports the charges of misconduct filed by the examiners, which were to the effect that respondent accepted employment from the complaining witnesses as an attorney, to defend them upon a complaint filed in the Superior Court in January, 1952, demanding $5,737.18 as being the unpaid balance allegedly owing to the plaintiff therein for the drilling of a well. The complaining witnesses (defendants in the civil suit) represented to respondent that they had a meritorious defense to the action, and that they desired to defend against the claim. Moeur advised them he would file an answer to the complaint without waiting for the twenty days within which to answer to expire, and subsequently told them on different occasions that he had in fact filed an answer to the complaint and that the suit was awaiting trial. These assurances continued until May, 1953. For twelve months Moeur stalled W. Francis Wilson, attorney for plaintiff in the civil action, with promises that he would get his clients to offer some acceptable basis of settlement of the suit.

Wilson had verbally extended time to answer the complaint, pending negotiations. Wilson, not being able to arrive at any basis of settlement with Moeur, finally, on April 27, 1953, wrote a letter to Moeur, stating that an answer to the complaint was required on or before May 10, 1953, and that unless an answer or other appearance was filed by that time a default would be entered. Moeur acknowledged receiving this letter but failed to file any answer or make an appearance. Judgment by default was entered on May 14, 1953. By letter dated May 22, 1953, Wilson, on behalf of the plaintiff in the civil action, advised the defendants that judgment had been obtained against them in the sum of $5,737.18. Upon receipt of this advice the defendants, in a state of fright, immediately contacted Moeur and advised him of the letter from Wilson. Moeur told them the judgment had been obtained in error, "not to worry about it", that he would have it set aside, and subsequently told them that the judgment had been set aside and that they would never hear any more about it. A levy and writ of execution on the judgment was issued in July, 1953, on the 320-acre ranch of defendants, and the property sold in August, 1953, for $6,190.80 in satisfaction of the judgment. The defendants, in reliance on Moeur's representations that the judgment had been set aside, continued to improve their ranch and expended time and considerable money thereon until April

8, 1954, when they were served with an order to show cause why they should not deliver up possession of their property. The order to show cause was returnable April 10, 1954. They immediately contacted Moeur, who on the day following this conference told them that he had had a long talk with Judge Henry Stevens, of the Superior Court of Maricopa County, that the hearing on the order to show cause had been continued, and that it would not be necessary for them to appear in court on the return day. The facts were that the hearing on the order to show cause had not been continued, a writ of assistance was issued on April 10, 1954, and the defendants were dispossessed from their property by the sheriff. Thereafter, the defendants by agreement regained possession of their property by the payment of a sum approximating $7,400 to the assignee of the judgment creditor.

These facts conclusively show that the respondent had no concept of the duties and obligations that he, as an attorney, owed to his clients. In addition to this lack of understanding he was guilty of wilful lying, deceit and deception. By his wilful neglect and deceit his clients were deprived of their rightful opportunity to defend against the complaint that had been lodged against them. His excuse for not answering the complaint is that he had come to the conclusion that defendants had no meritorious defense, and that it would have been in violation of his duty as a lawyer to the court to present a defense that he considered to be without merit. He has continuously disclaimed any responsibility for the predicament into which the Darnells became engulfed.

On the hearing in this court respondent orally moved that the proceedings be dismissed on the ground the State Bar had been guilty of laches in its investigations and final presentment in this court. The laxness of the State Bar in the premises offers no legal excuse such as precludes this court from considering the charges against respondent and determining his fitness to continue as a licensed attorney-at-law.

We feel that we would be remiss in our duties if we failed to take cognizance of the loose and negligent manner in which the local grievance committee and their examiners performed their duties in this matter. Notwithstanding the fact that the complaint (letter) lodged against respondent charged him with shocking, wilful and wanton misconduct as an attorney, the examiners took eight months to lodge the specific charges of misconduct. The committee after conducting a hearing on the formal charges went into hibernation for a year and nine months before it came forth with findings. The issues were clear and concise, and should have been promptly met by committee members responsive to their obligations. Such dilatory and neg-

ligent conduct casts suspicion on the integrity of the Arizona State Bar.

 On the whole record we are satisfied the respondent is no longer qualified to serve the public in the capacity of an attorney and as a member of the State Bar of Arizona, and he is accordingly disbarred from practice of law in the State of Arizona.

UDALL, C. J., and PHELPS, STRUCKMEYER, and LA PRADE, JJ., concur.

Note: Justice WINDES disqualified himself from any consideration of this matter.